1
2
3
4
5

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

6   ARMANDO C. MENDOZA,                          Case No. 3:15-cv-00507-MMD-CLB

7                                Petitioner,      ORDER
          v.

8   ROBERT LEGRAND, et al.,

9                                Respondents.

10

11   **I.    SUMMARY**

12         Petitioner Armando Mendoza filed a petition for writ of *habeas corpus* under 28

13   U.S.C. § 2254. (ECF No. 26 ("Petition").) This matter is before the Court for adjudication

14   on the merits of the remaining grounds in the Petition. For the reasons discussed below,

15   the Court denies the Petition and denies Petitioner a certificate of appealability.

16   **II.   BACKGROUND**

17         Petitioner was charged in the state justice court with three counts of sexual assault

18   against a child under 14 years of age, four counts of lewdness with a child under 14 years

19   of age, and one count of battery with intent to commit sexual assault on a victim under 16

20   years of age. (ECF No. 27-1.) Prior to Petitioner's arrest, detectives from the Washoe

21   County Sheriff's Department interviewed Petitioner.[1] (*See* ECF No. 27-30.) Petitioner

22   drove from California to speak to the detectives. (ECF No. 27-4 at 8.) A Spanish-speaking

23   detective translated for Petitioner and the interviewing detective.

24         During the interview, Petitioner was given warnings pursuant to *Miranda v.*

25   *Arizona*, 384 U.S. 436 (1966). (ECF No. 27-30 at 8.) The Spanish-speaking detective

26   read the *Miranda* warnings out loud in Spanish to Petitioner and provided the written

27   *Miranda* warnings in Spanish for Petitioner to read. (*Id.* at 8, 10.) Petitioner asked the

28

---

[1]Petitioner's interview was recorded and transcribed. The Nevada Court of Appeals noted, however, that Petitioner did not attach a transcript of the interview to his state habeas appeal. (*See* ECF No. 10-15 at 3.)

1   detectives, "[w]hen could I see this attorney?" (*Id.* at 10.) The interviewing detective

2   stated, "[y]ou have to request one. And if you do we can't talk. And that's fine if that's what

3   you want to do, that's what you need to do." (*Id.*) The translating detective stated, "[i]f you

4   want an attorney and are asking for an attorney, we cannot talk." (*Id.*) The interview

5   continued. (*Id.*)

6         Petitioner waived a preliminary hearing and agreed to plead guilty to two counts of

7   lewdness with a child under 14 years of age. (ECF No. 27-2.) In exchange, the State

8   agreed to drop the six remaining felony charges. (ECF Nos. 27-3, 27-5.) At Petitioner's

9   arraignment, the state district court questioned Petitioner's counsel because the state

10  district court was "anticipating a habeas." (ECF No. 27-4 at 6.) The state district court and

11  counsel discussed Petitioner's interview, in pertinent part, as follows:[2]

12      *Counsel:* . . . And I can advise the Court that the statements that he made

13      to the police in the interviews were entirely consistent with what he told me
        when I met with him on the 27th of March.

14      *The Court:* All right. Did you investigate as to whether there is a reason to

15      seek to suppress the statements made?

16      *Counsel:* The facts going into [Petitioner's] interview with the police were
        that [Petitioner] drove from California voluntarily to come and speak with the

17      police. It was pretty clear in the conversation that [Petitioner] was there
        willingly, voluntarily and he desired to talk to the police.

18
        *The Court:* Did he incriminate himself in the statements?

19      *Counsel:* He did, your honor.

20

21  (*Id.* at 7-8.) Petitioner was arraigned. The state district court asked Petitioner if he

22  committed the acts alleged in each count and Petitioner affirmed that he did. (ECF No.

23  27-4 at 17.) The state district court sentenced Petitioner on each count to a maximum

24  term of life with the minimum parole possibility after ten years—all sentences to run

25  concurrently. (ECF No. 27-7.) A judgment of conviction was entered. (*Id.*) Petitioner did

26  not appeal.

27

28      [2]The Court makes no credibility findings or other factual findings regarding the truth
    or falsity of evidence or statements of fact in the state court. The Court summarizes
    statements solely as background to the issues presented in the case, and it does not
    summarize all such material. No statement of fact made in describing statements,
    testimony, or other evidence in the state court constitutes a finding by the Court.

2

Petitioner then filed a state habeas petition, and the State filed a motion to dismiss that petition. (ECF Nos. 10-2, 27-22.) The state district court granted the State's motion and dismissed that petition. (ECF No. 10-3 at 6-10.) The Nevada Court of Appeals affirmed the dismissal. (ECF No. 10-15.) Petitioner dispatched his *pro se* federal *habeas corpus* petition (ECF No. 6) to this Court on October 2, 2015. The Court appointed counsel, who filed a first amended petition (ECF No. 9) on April 22, 2016. Petitioner sought leave to file a second amended petition and the Court granted such request. (*See* ECF No. 17.) Petitioner filed the second amended petition on January 31, 2017. (ECF No. 26.) Respondents filed a motion to dismiss (ECF No. 36), and the Court granted Respondents' motion in part, dismissing Ground 1(D) and finding Ground 3 unexhausted. (ECF No. 44.)

In the remaining grounds, Petitioner asserts the following instances of ineffective-assistance-of-counsel in violation of Petitioner's federal constitutional rights:

Ground 1(a):   Counsel failed to file a motion to suppress Petitioner's statements.

Ground 1(b):   Counsel advised Petitioner to waive a preliminary hearing.

Ground 1(c):   Counsel represented Petitioner despite having a conflict of interest.

Ground 1(e):   Petitioner entered a guilty plea because of ineffective- assistance-of-counsel.

Ground 1(f):   Cumulative effect of instances of ineffective-assistance-of-counsel.

In Ground 2, Petitioner asserts that the trial court erred by preempting Petitioner's right to conflict-free counsel in violation of his rights to due process and effective-assistance-of-counsel. (ECF No. 26.)

## III.   LEGAL STANDARD

### A.   Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

1
2

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

3
4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5
6

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7   28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme

8   Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a

9   rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state

10  court confronts a set of facts that are materially indistinguishable from a decision of [the

11  Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v.*

12  *Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694

13  (2002)). A state court decision is an unreasonable application of clearly established

14  Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court

15  identifies the correct governing legal principle from [the Supreme] Court's decisions but

16  unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75. "The

17  'unreasonable application' clause requires the state court decision to be more than

18  incorrect or erroneous. The state court's application of clearly established law must be

19  objectively unreasonable." *Id.*

20      The Supreme Court has instructed that "[a] state court's determination that a claim

21  lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

22  on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

23  (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case

24  for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at

25  102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181

26  (2011) (internal quotation marks and citations omitted) (describing the standard as a

27  "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which

28  demands that state-court decisions be given the benefit of the doubt").

1

**B.     Standard for evaluating an Ineffective-Assistance-of-Counsel claim**

2    In *Strickland*, the Supreme Court propounded a two-prong test for analysis of

3  claims of ineffective assistance of counsel requiring Petitioner to demonstrate that: (1) the

4  attorney's "representation fell below an objective standard of reasonableness[;]" and (2)

5  the attorney's deficient performance prejudiced Petitioner such that "there is a reasonable

6  probability that, but for counsel's unprofessional errors, the result of the proceeding would

7  have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts

8  considering a claim of ineffective assistance of counsel must apply a "strong presumption

9  that counsel's conduct falls within the wide range of reasonable professional assistance."

10  *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel

11  was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.

12    Moreover, to establish prejudice under *Strickland*, it is not enough for Petitioner "to

13  show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*

14  at 693. Rather, the errors must be "so serious as to deprive the [Petitioner] of a fair trial,

15  a trial whose result is reliable." *Id.* at 687. When the ineffective-assistance-of-counsel

16  claim is based on a guilty plea challenge, the *Strickland* prejudice prong requires

17  Petitioner to demonstrate "there is a reasonable probability that, but for counsel's errors,

18  [Petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill*

19  *v. Lockhart*, 474 U.S. 52, 59 (1985).

20    Under *Hill*, a challenge to the voluntariness of a plea may be based upon a claim

21  of ineffective assistance of counsel. As the Supreme Court observed:

22    For example, where the alleged error of counsel is a failure to investigate or
discover potentially exculpatory evidence, the determination whether the
23    error "prejudiced" [Petitioner] by causing him to plead guilty rather than go
to trial will depend on the likelihood that discovery of the evidence would
24    have led counsel to change his recommendation as to the plea. This
assessment, in turn, will depend in large part on a prediction whether the
25    evidence likely would have changed the outcome of a trial. Similarly, where
the alleged error of counsel is a failure to advise [Petitioner] of a potential
26    affirmative defense to the crime charged, the resolution of the "prejudice"
inquiry will depend largely on whether the affirmative defense likely would
27    have succeeded at trial. . . . As we explained in *Strickland v. Washington*,
*supra*, these predictions of the outcome at a possible trial, where necessary,
28

5

1
2

should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker."

3   *Id.* at 59-60 (citing *Strickland*, 466 U.S. at 695). Where a state district court previously

4   adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing

5   the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05.

6   In *Harrington*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly

7   deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see*

8   *also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks

9   omitted) ("When a federal court reviews a state court's *Strickland* determination under

10  AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme

11  Court's description of the standard as doubly deferential."). The Court further clarified,

12  "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.

13  The question is whether there is any reasonable argument that counsel satisfied

14  *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

15  **IV.   DISCUSSION**

16      **A.  Ground 1(a)**

17      Petitioner alleges that his counsel was rendered ineffective because counsel failed

18  to file a motion to suppress Petitioner's videotaped interview with law enforcement. (ECF

19  No. 26 at 10.) Petitioner asserts that counsel should have filed a motion to suppress

20  Petitioner's statements to law enforcement on the basis that Petitioner invoked his right

21  to counsel during the interview, and that the detectives tricked Petitioner into speaking

22  with them by assuring Petitioner that he would be free to return to his life. (*Id.* at 12.) The

23  Nevada Court of Appeals held:

24          Mendoza argues his counsel was ineffective for failing to file a motion to
            suppress Mendoza's confession. Mendoza asserts he is illiterate,
25          uneducated, does not understand English, and counsel should have sought
            suppression of the confession on those bases. Mendoza fails to
26          demonstrate his counsel's performance was deficient or resulting prejudice.
            Prior to entry of Mendoza's guilty plea, the district court inquired if there
27          were any reasons for counsel to move to suppress the confession. Counsel
            responded that he had reviewed the interview, and Mendoza had voluntarily
28          traveled to talk with the officers and had clearly desired to talk with the
            police. Given those circumstances, Mendoza does not demonstrate

6

1

2

counsel's decision to decline to move to suppress the confession was objectively unreasonable. *See Casteel v. State*, 122 Nev. 356, 362, 131 P.3d 1, 4 (2006); *Mendoza v. State*, 122 Nev. 267, 276, 130 P.3d 176, 181 (2006.)

3

4

5

6

7

Moreover, Mendoza did not include a transcript of his confession in the appendix before this court. As Mendoza is the appellant, is it his burden to provide this court with an adequate record for review, *see McConnell v. State*, 125 Nev. 256 n.13, 212 P.3d 307, 316 n. 13 (2009), and thus, he fails to demonstrate there was reasonable probability of a different outcome had counsel moved to suppress the confession. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

8

9

10

(ECF No. 10-15 at 3.) The Nevada Court of Appeals' rejection of Petitioner's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United State Supreme Court.

11

12

13

14

15

16

17

18

19

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Custodial interrogation "mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* "[T]he ultimate inquiry" of whether someone is in custody "is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted).

20

21

22

23

24

25

26

The United States Supreme Court reiterated the principle that the "assertion of the right to counsel [is] a significant event and that once exercised by the accused, the interrogation must cease until an attorney is present." *Edwards v. Arizona*, 451 U.S. 477, 485 (1981). The *Miranda-Edwards* line of precedent, however, applies "only in the context of custodial interrogation. If the defendant is not in custody then those decisions do not apply." *Montejo v. Louisiana*, 556 U.S. 778, 795 (2009); *See also United States v. Hines*, 963 F.2d 255, 256 (9th Cir. 1992).

27

28

The Nevada Court of Appeals reasonably determined that Petitioner failed to demonstrate that his counsel was deficient for failing to file a motion to suppress

Petitioner's statements to law enforcement. The transcript of Petitioner's interview with law enforcement was not presented to the Nevada Court of Appeals for review in Petitioner's state habeas appeal. The transcript, therefore, may not be considered in reviewing the Nevada Court of Appeals' adjudication of the claim under AEDPA. Federal habeas review, instead, must be conducted based upon the record that was presented to the Nevada Court of Appeals at the time of its adjudication of the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 180-87 (2011).

As noted by the Nevada Court of Appeals, at Petitioner's arraignment, Petitioner's counsel represented to the state district court that counsel reviewed the transcript of the interview and investigated whether there was a reason to seek to suppress Petitioner's statements to law enforcement. (ECF No. 27-4 at 7.) Counsel determined that Petitioner willingly and voluntarily spoke to law enforcement based on Petitioner's conversation with the detectives and the fact that Petitioner drove himself from California to speak with the detectives. (*Id.* at 7-8.) Counsel made the determination that Petitioner was not subject to custodial interrogation based on counsel's review of the transcript. Counsel's decision not to seek suppression of Petitioner's statements to law enforcement does not fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.*

In order to prevail on the ineffective-assistance-of-counsel claim, Petitioner must show his counsel acted deficiently and "a reasonable probability that, but for counsel's [deficiencies], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court, however, need not "address both components of the inquiry" if Petitioner "makes an insufficient showing on one." *Id.* at 697. Although the Nevada Court of Appeals held Petitioner failed to demonstrate both deficiency and resulting prejudice, Petitioner has not sufficiently demonstrated here his counsel's "representation fell below an objective standard of reasonableness." *Id.* Therefore, the *Strickland* inquiry need not continue, and Petitioner is denied federal habeas relief for Ground 1(a).

1

2

**B. Ground 1(b)**

In Ground 1(b), Petitioner alleges that he received ineffective-assistance-of-counsel because counsel advised Petitioner to waive a preliminary hearing. (ECF No. 26 at 13.) Petitioner asserts that a preliminary hearing would have allowed him an opportunity to test the State's case, establish a defense, and establish the charges were redundant. (*Id.*) In Petitioner's state habeas appeal, the Nevada Court of Appeals held:

> Mendoza argues his counsel was ineffective for permitting Mendoza to waive the preliminary hearing. Mendoza fails to demonstrate his counsel's performance was deficient or resulting prejudice. Mendoza waived the preliminary hearing as a result of the plea negotiations. Mendoza does not identify what actions counsel should have performed differently regarding the preliminary hearing proceedings or how pursuing a preliminary hearing would have altered the outcome of the proceedings. Bare claims, such as this one, are insufficient to demonstrate a petitioner is entitled to relief. *See Hargrove*, 100 Nev. at 502-03, 686 P.2d at 225. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

(ECF No. 10-15 at 3-4.) The Nevada Court of Appeals' ruling was neither contrary to nor an unreasonable application of *Strickland*.

As the Nevada Court of Appeals noted, Petitioner waived the preliminary hearing as a result of plea negotiations. Defense counsel, in advising a defendant whether to take a plea agreement, will balance the rights that a defendant forfeits with the benefits of any agreement offered. Here, Petitioner was charged with eight felony counts carrying a substantial amount of prison time. (ECF No. 27-1.) Petitioner's counsel represented to the state district court that during Petitioner's interview with the detectives, Petitioner incriminated himself and the statements Petitioner made to the detectives were consistent with statements Petitioner made to his counsel. (ECF No. 27-4 at 6.)

Moreover, Petitioner acknowledged his conduct with his sister, the mother of the victim. (ECF No. 27-6 at 6.) The State represented at sentencing that it could prove that "multiple incidents had occurred" based on the evidence and Petitioner's statements. (ECF No. 27-6 at 11.) In light of the evidence against Petitioner and the State's offer to dismiss six charges against him, it was not unreasonable for Petitioner's counsel to advise Petitioner to forego his preliminary hearing. The reasonableness of such a decision is

9

1   underscored by Petitioner's failure to present the Court with factual allegations or
2   exculpatory evidence to demonstrate how pursuing a preliminary hearing would have
3   altered Petitioner's decision to accept his plea agreement. Accordingly, the Nevada Court
4   of Appeals reasonably determined that Petitioner failed to demonstrate that his counsel
5   was deficient or a reasonable probability that, but for counsel's errors, Petitioner would
6   have pleaded not guilty and insisted on going to trial. Petitioner is therefore denied federal
7   habeas relief on Ground 1(b).

8       **C.  Ground 1(c)**

9       In Ground 1(c), Petitioner alleges that his counsel was rendered ineffective due to
10  a conflict of interest. (ECF No. 26 at 14.) Petitioner asserts that he was berated by
11  counsel, counsel called Petitioner disparaging names, and that counsel stated that
12  counsel hated working on "these type of cases." (*Id.* at 15.) In Petitioner's state habeas
13  appeal, the Nevada Court of Appeals held:

> Mendoza argues his counsel was ineffective because counsel called him
> disparaging names and stated he hated working on these type of cases.
> Mendoza fails to demonstrate prejudice for this claim. Mendoza
> received a substantial bargain by entering a guilty plea. Mendoza was
> originally charged with eight felonies and had made incriminating
> statements to the police. The State agreed to reduce the charges to only two felonies
> in exchange for Mendoza's guilty plea. In addition, Mendoza stated in his
> petition that he did not learn of the meaning of counsel's statements until a
> fellow prisoner translated them for him at a later date. Accordingly, Mendoza
> fails to demonstrate these alleged statements had any bearing upon his
> decision to plead guilty. Thus, Mendoza fails to demonstrate a reasonable
> probability he would have refused to plead guilty and would have insisted
> on going to trial had counsel not uttered those alleged statements.
> Therefore, the district court did not err in denying this claim without
> conducting an evidentiary hearing.

23  (ECF No. 10-15 at 4.) The Nevada Court of Appeals' ruling was neither contrary to nor an
24  unreasonable application of clearly established law as determined by the Supreme Court
25  of the United States.

26      An error by counsel, even if professionally unreasonable, does not warrant setting
27  aside the judgment of a criminal proceeding if the error had no effect on the judgment.
28  *See Strickland*, 466 U.S. at 691. An exception to the *Strickland* prejudice requirement

10

1    exists, however, when "prejudice is presumed" in situations where counsel is actually or
2    constructively denied. *Id.* at 692. "[A] similar, though more limited, presumption of
3    prejudice" applies to an ineffectiveness claim predicated on counsel's actual conflict of
4    interest. *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980)).

5         Although Petitioner alleges that counsel called Petitioner disparaging names and
6    stated that counsel hated working on "these type of cases," Petitioner did not specifically
7    allege counsel's statements should be considered an actual conflict of interest in
8    Petitioner's state habeas case. Nonetheless, the Nevada Court of Appeals evaluated
9    Petitioner's claim under the general test for ineffectiveness claims under *Strickland*, rather
10   than under *Sullivan's* conflict rubric as argued by Petitioner in his reply. (ECF No. 56 at
11   19-24.) The United States Supreme Court has not addressed a claim alleging ineffective
12   assistance of counsel predicated on disparaging statements from counsel causing a
13   conflict of interest. Where the controlling law is uncertain, a state court may reasonably
14   choose one possible legal standard over another. *See Knowles v. Mirzayance*, 556 U.S.
15   111, 122 (2009) (internal quotations omitted) ("[I]t is not an unreasonable application of
16   clearly established Federal law for a state court to decline to apply a specific legal rule
17   that has not been squarely established by this Court.").

18        The Nevada Court of Appeals reasonably determined that Petitioner failed to
19   demonstrate prejudice under *Strickland*. To obtain relief on this type of claim, "[P]etitioner
20   must convince the court that a decision to reject the plea bargain would have been rational
21   under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). In exchange for
22   Petitioner's guilty plea, the State agreed to drop six separate felony charges carrying
23   substantial prison sentences. (ECF No. 27-5.) If Petitioner rejected the plea agreement
24   and proceeded to trial, Petitioner would have faced six additional felony charges and
25   would not have gained the benefit of reduced exposure at sentencing.

26        Petitioner failed to demonstrate that, but for counsel's alleged statements,
27   Petitioner would not have pled guilty and would have insisted on going to trial. Petitioner
28   stated that he did not understand counsel's alleged statements until a fellow inmate

11

1    translated the statements to Petitioner in Spanish at a later date. Based on such

2    representation, the Nevada Court of Appeals determined that Petitioner failed to

3    demonstrate counsel's alleged statements had any bearing on Petitioner's decision to

4    plead guilty. The Nevada Court of Appeals reasonably found Petitioner failed to

5    demonstrate a reasonable probability that counsel's alleged statements and conduct

6    would cause a rational defendant in Petitioner's situation to plead not guilty and proceed

7    to trial. *See Hill*, 474 U.S. at 59-60. Petitioner is therefore denied federal habeas relief for

8    Ground 1(c).

9        **D. Grounds 1(e) and 1(f)**

10       In Ground 1(e), Petitioner alleges that he entered a guilty plea only due to the

11   ineffective assistance of his trial counsel. (ECF No. 26 at 17.) Petitioner asserts that the

12   ineffective assistance alleged in Grounds 1(a), 1(b), and 1(c) led him to enter a guilty plea

13   that was not knowing, voluntary, or intelligent. (*Id.*) In Ground 1(f), Petitioner alleges that

14   he was deprived of his right to effective assistance of counsel due to the cumulative effect

15   of counsel's errors. (*Id.* at 18.) The Nevada Court of Appeals held:

16       Mendoza argues the cumulative effect of ineffective assistance of counsel
         warrants vacating his judgment of conviction. Mendoza fails to demonstrate
17       any errors, even if considered cumulatively, amount to ineffective
         assistance of counsel sufficient to warrant vacating the judgment of
18       conviction. Therefore, he fails to demonstrate that he was entitled to relief
         for this claim.
19

20   (ECF No. 10-15 at 4-5.)

21       Petitioner has failed to meet his burden of proving the Nevada Court of Appeals'

22   ruling was either contrary to or an unreasonable application of clearly established law as

23   determined by the United States Supreme Court. In light of the Nevada Court of Appeals'

24   reasonable determination that Petitioner had not shown counsel rendered ineffective

25   assistance of counsel, it was reasonable in finding that there was no cumulative error.

26   Accordingly, the Court will deny habeas relief as to Grounds 1(e) and 1(f).

27   ///

28   ///

12

1

### E. Ground 2

2      In Ground 2, Petitioner argues that the state district court erred in conducting a

3   colloquy with counsel at Petitioner's arraignment. (ECF No. 26 at 18.) Petitioner asserts

4   the state district court "subverted the habeas process by asking a series of unchallenged

5   questions of trial counsel to prove at the arraignment that [Petitioner] received effective

6   representation." (ECF No. 56 at 27.) Respondents argue that Ground 2 is procedurally

7   defaulted because Petitioner presented this claim in Petitioner's state habeas appeal to

8   the Nevada Court of Appeals for the first time in his state postconviction action, and

9   because NRS § 34.810 is an independent and adequate bar to review. (ECF No. 52 at 9-

10  10.) Respondents also argue that Ground 2 is precluded from federal habeas relief under

11  *Tollett v. Henderson,* 411 U.S. 258 (1973).[3] The Nevada Court of Appeals held:

12
>    Mendoza argues that trial court erred by questioning counsel at the
13   arraignment regarding counsel's representation of Mendoza. This claim
>    was not based on an allegation that Mendoza's guilty plea was involuntarily
14   or unknowingly entered or that his plea was entered without effective
>    assistance of counsel. Therefore, this claim was not permissible in a post-
15   conviction petition for writ of habeas corpus stemming from a guilty plea.
>    *See* NRS 34.810(1)(a). Accordingly, the district court did not err in denying
16   this claim.

17  (ECF No. 10-15 at 5.) NRS § 34.810(1)(a) states, in relevant part:

18      1.      The court shall dismiss a petition if the court determines that:

19          (a)   The petitioner's conviction was upon a plea of guilty or guilty but
20          mentally ill and the petition is not based upon an allegation that
>                the plea was not involuntarily or unknowingly entered or that the
21               plea was entered without effective assistance of counsel.

22  ///

23

24      [3]The contention that NRS § 34.810(1)(a) creates a state law procedural bar is
    plausibly subject to the argument that NRS § 34.810(1)(a) merely codifies the substantive
25  ruling of *Tollett* in that, "[w]hen a criminal defendant has solemnly admitted in open court
    that he is in fact guilty of the offense with which he is charged, he may not thereafter raise
26  independent claims relating to the deprivation of constitutional rights that occurred prior
    to the entry of the guilty plea." 411 U.S. at 267. The parties, however, did not brief such
27  issue and the Court, therefore, proceeds on the contention that NRS § 34.810(1)(a)
28  constitutes a state law procedural bar. *See United States v. Sineneng-Smith*, 140 S. Ct.
    1575, 1576 (2020) (holding that federal courts rely on the parties to frame the issues for
    decision).

13

1    "Procedural default" refers to the situation where a petitioner in fact presented a

2    claim to the state courts but the courts disposed of the claim on procedural grounds,

3    instead of on the merits. A federal court will not review a claim for *habeas corpus* relief if

4    the decision of the state court regarding that claim rested on a state law ground that is

5    independent of the federal question and adequate to support the judgment. *See Coleman*

6    *v. Thompson,* 501 U.S. 722, 730-31 (1991). The state law ground may be a substantive

7    rule dispositive of the case, or a procedural barrier to adjudication of the claim on the

8    merits. *See Walker v. Martin*, 562 U.S. 307, 315 (2011) (citing *Wainwright v. Sykes*, 433

9    U.S. 72, 81-82 (1977)).

10    For a state procedural rule to be "independent," the state law ground for decision

11    must not be "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040

12    (1983). A state law ground is so interwoven if "the state has made application of the

13    procedural bar depend on an antecedent ruling on federal law [such as] the determination

14    of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S.

15    68, 75 (1985). To qualify as an "adequate" procedural ground, a state rule must be "firmly

16    established and regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

17    In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the Ninth Circuit Court

18    of Appeals announced a burden-shifting test for analyzing adequacy. Under *Bennett*, the

19    state carries the initial burden of adequately pleading "the existence of an independent

20    and adequate state procedural ground as an affirmative defense." *Id.* at 586. This burden

21    shifts to the petitioner "to place that defense in issue," which the petitioner may do "by

22    asserting specific factual allegations that demonstrate the inadequacy of the state

23    procedure, including citation to authority demonstrating inconsistent application of the

24    rule." *Id.* Assuming petitioner has met his or her burden, "the ultimate burden" of proving

25    the adequacy of the state bar rests with the state, which must demonstrate "that the state

26    procedural rule has been regularly and consistently applied in habeas actions." *Id.*

27    Here, Respondents adequately plead that the Nevada Court of Appeals refused to

28    hear Ground 2 under NRS § 34.810(1)(a) and that NRS § 34.810 is an independent and

14

1   adequate bar to federal review. (ECF No. 52 at 9-10.) Petitioner, however, has not met

2   his burden of placing NRS § 34.810(1)(a) in issue as required by *Bennett*. The Court

3   therefore finds that the Nevada Court of Appeals' reliance on that rule is adequate to bar

4   federal review.

5          To overcome a claim that was procedural defaulted in state court, a petitioner must

6   establish either (1) cause for the default and prejudice attributable thereto or (2) that

7   failure to consider the defaulted claims will result in a "fundamental miscarriage of

8   justice." *Harris v. Reed,* 489 U.S. 255, 262 (1989). To prove a "fundamental miscarriage

9   of justice," a petitioner must show that the constitutional error of which he or she

10  complains "has probably resulted in the conviction of one who is actually

11  innocent." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Murray v.*

12  *Carrier*, 477 U.S. 478, 496 (1986)). "Actual innocence" is established when, in light of all

13  of the evidence, "it is more likely than not that no reasonable juror would have convicted

14  [the petitioner]." *Id.* at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)).

15  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id. See also*

16  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

17         Petitioner alleges that counsel's conflict of interest that prevented Petitioner from

18  raising the claim on direct appeal amounts to a fundamental miscarriage of justice. As the

19  Court held in its previous order granting in part and denying in part Respondents' motion

20  to dismiss, Petitioner has not made a showing that Petitioner is actually innocent. (*See*

21  ECF No. 44 at 7.) Petitioner therefore has not demonstrated that the Court's failure to

22  consider the procedurally defaulted claim will result in a fundamental miscarriage of

23  justice. Accordingly, the Court finds the claim raised in Ground 2 was procedurally

24  defaulted in state court, and Petitioner has failed to show a fundamental miscarriage of

25  justice or cause and prejudice to excuse the procedural default. As such, Ground 2 is

26  barred from review by the Court and is dismissed.

27         Under *de novo* review, the Court finds that Petitioner is precluded from federal

28  habeas relief as to Ground 2 under *Tollett*. "When a criminal defendant has solemnly

1  admitted in open court that he is in fact guilty of the offense with which he is charged, he
2  . . . may only attack the voluntary and intelligent character of the guilty plea by showing
3  that the advice he received from counsel was not within the [constitutional] standards
4  [established for effective assistance of counsel.]" *Tollett*, 411 U.S. at 267. Accordingly,
5  Ground 2 does not provide a basis for federal habeas relief.

6  **V.    CERTIFICATE OF APPEALABILITY**

7  This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section
8  2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). The
9  Court has therefore *sua sponte* evaluated the claims within the Petition for suitability for
10  the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-
11  65 (9th Cir. 2002). Pursuant to § 2253(c)(2), a COA may issue only when the petitioner
12  "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §
13  2253(c)(2). With respect to claims rejected on the merits, a petitioner "must demonstrate
14  that reasonable jurists would find the district court's assessment of the constitutional
15  claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot*
16  *v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). Applying this standard, the Court finds a
17  certificate of appealability is unwarranted.

18  **VI.    CONCLUSION**

19  It is therefore ordered that Petitioner's writ of habeas corpus (ECF No. 26) is
20  denied.

21  It is further ordered that a certificate of appealability is denied.

22  The Clerk of Court is directed to enter judgment accordingly and close this case.

23  DATED THIS 19th Day of February 2021.

26  MIRANDA M. DU
27  CHIEF UNITED STATES DISTRICT JUDGE

16